# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-00116-COA

**JOHN EDWARD YOUNG, JR. A/K/A JOHN EDWARD YOUNG A/K/A JOHN YOUNG**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/28/2014 |
| TRIAL JUDGE: | HON. FORREST A. JOHNSON JR. |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAMON RAMON STEVENSON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LADONNA C. HOLLAND |
| DISTRICT ATTORNEY: | RONNIE LEE HARPER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF SEXUAL BATTERY AND SENTENCED TO TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED - 06/28/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., ISHEE AND WILSON, JJ.**

**WILSON, J., FOR THE COURT:**

¶1.    John Edward Young Jr. (Young) was convicted of sexual battery of his uncle's eleven-year-old stepdaughter, K.M.[1]  On appeal, Young argues that the trial judge erred by declining to excuse a prospective juror for cause, by allowing testimony that Young had stated that he had prior "felonies," by precluding Young's uncle from testifying regarding

---

[1] In the interest of privacy, the victim's name has been substituted with initials.

unspecified past behavior of K.M., and by giving an erroneous jury instruction. For the reasons explained below, these issues are all procedurally barred and/or without merit. Young also alleges that his trial counsel was ineffective; however, we do not address this claim because it is not capable of determination on the present record. Accordingly, we affirm Young's conviction and sentence.

**FACTS**

¶2. On July 28, 2012, Young was staying at the home of his uncle, Glenn Young (Glenn), and Glenn's wife, Kelly Young (Kelly). Sometime after midnight, Young, who was then thirty-six years old, entered the room of Kelly's eleven-year-old daughter, K.M. K.M. left her room briefly, and when she returned, Young was wearing only his boxers. Young threw K.M. onto her bed, lay on top of her, and put his hand over her mouth. Young pulled down K.M.'s pants and inserted his penis into her vagina. K.M. testified that Young was wearing a condom, which he must have put on while she was out of the room. K.M. tried to scream, but Young kept his hand over her mouth. When Young eventually stopped, K.M. tried to leave, but Young stopped her and then penetrated her anally. Young stopped again, and K.M. was finally able to leave the room. She went to the living room and cried, and Young followed her there and told her he was "sorry."

¶3. K.M. then ran to Kelly's and Glenn's bedroom crying and screaming that "[Young] touched her." Young ran into the room behind her and said, "[K.M.], tell the truth. Tell the truth. I got felonies." Kelly and Glenn then rushed K.M. to the hospital.

¶4. At the hospital, K.M. and Kelly were both "crying and very distraught." A nurse

2

examined K.M., observed that she had suffered a recent vaginal tear, and collected a rape kit, which was sent to the State Crime Lab. There was blood on K.M.'s underwear and pajamas, her rectal swab and underwear tested positive for blood and seminal fluid, and her vaginal swab tested positive for blood. Analysts at the State Crime Lab attempted to compare the seminal fluid to a known sample of Young's DNA, but forensic biologist Alexandria Bradley testified that the results of the test were "inconclusive" because the fluid had been mixed with K.M.'s blood.

¶5.  Young, accompanied by his stepfather, turned himself in to the Adams County Sheriff's Department in the early hours of the morning. Captain Robert Brown interviewed Young after advising him of his rights. Young admitted that he penetrated K.M. vaginally. In a written statement, Young claimed that he fell asleep in K.M.'s bed and awoke to find her on top of him and having sex with him. Young claimed that when he first awoke he thought he was dreaming and that he made K.M. stop as soon as he realized what she was doing. Young also claimed that a condom that he kept in his wallet was "missing" and that he had "no idea where it [was]."

¶6.  Young was arrested and indicted for sexual battery. His first trial ended in a hung jury and a mistrial. At his second trial, he testified and continued to maintain that he awoke to find K.M. on top of him. Young claimed that he did not know whether he penetrated K.M. He said that he told Captain Brown the same thing during his interview. He testified that he admitted to penetration only because Captain Brown was adamant that penetration had occurred. Young claimed that when he awoke, K.M. had begged him not to tell her mother

3

what she had done.

¶7.    The jury convicted Young of sexual battery, and the court sentenced him to the statutory minimum of twenty years' imprisonment. *See* Miss. Code Ann. §§ 97-3-95(1)(d) & 97-3-101(3) (Rev. 2006). Young subsequently filed a motion for a new trial or judgment notwithstanding the verdict, which was denied, and a notice of appeal.

## DISCUSSION

¶8.    On appeal, Young argues that the trial court erred by: (1) refusing to excuse for cause a prospective juror whose daughter was sexually assaulted; (2) allowing Kelly to testify that Young said he had prior felony convictions; (3) refusing to allow Glenn to testify about K.M.'s past behavior or alleged dishonesty; and (4) giving an instruction on the elements of the offense that did not require the jury to be unanimous. He also claims that his trial counsel was ineffective in failing to proffer Glenn's testimony concerning K.M.'s past behavior. We address these issue in turn below, find no reversible error, and affirm.

### I.    Juror Challenge

¶9.    During voir dire, a prospective juror disclosed that her daughter had been sexually assaulted; however, she stated that she could be fair and impartial if chosen to serve on the jury. Young subsequently challenged the prospective juror for cause. The court denied the challenge because the prospective juror had stated clearly that she could be fair.

¶10.    Our Supreme Court has held that "[b]efore a claim related to a denial of a challenge for cause may be valid, (1) the defendant must have exhausted all of his peremptory challenges *and* (2) an incompetent juror must be forced by the trial court's erroneous ruling

4

to sit on the jury." *Burgess v. State*, 178 So. 3d 1266, 1276 (¶28) (Miss. 2015) (emphasis added) (citing *Christmas v. State*, 10 So. 3d 413, 423 (¶47) (Miss. 2009)). In this case, the record does not disclose whether Young exhausted his peremptory challenges, but more important, the record is clear that the challenged juror did *not* sit on the jury. Accordingly, Young's argument is without merit. *See, e.g.*, *Johnson v. State*, 68 So. 3d 1239, 1246-47 (¶¶24-25) (Miss. 2011); *Townes v. State*, 93 So. 3d 895, 897 (¶9) (Miss. Ct. App. 2012).

## II. Young's Statement Regarding Prior Felony Convictions

¶11. The court partially denied Young's pretrial motion in limine to exclude any mention of his prior convictions. The court ruled that Kelly could testify as to Young's statements in the immediate aftermath of the crime. Therefore, Kelly was permitted to testify that Young blurted out, "[K.M.], tell the truth. Tell the truth. I got felonies." The State also mentioned this anticipated testimony in its opening argument, but the jury was not told anything else about Young's prior crimes. Nonetheless, Young argues that the disclosure that he had "felonies" violated Mississippi Rules of Evidence 403 and 404(b). We review the trial court's ruling for abuse of discretion only. *See, e.g.*, *Beal v. State*, 134 So. 3d 383, 387 (¶17) (Miss. Ct. App. 2014).

¶12. Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

M.R.E. 404(b). If the evidence is admissible for a permissible purpose, the court must also

5

consider whether its "probative value is substantially outweighed by the danger of unfair prejudice." M.R.E. 403.

¶13. The trial judge concluded that the testimony was relevant to the circumstances of "the disclosure of the alleged crime immediately after it allegedly happened." The judge also concluded that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. The trial judge did not abuse his discretion. While Young claimed that he was only admonishing K.M. to "tell the truth," his statement could also be interpreted as an attempt to keep her from disclosing a criminal act. So interpreted, the statement is admissible to show knowledge or "consciousness of guilt." *See Beal*, 134 So. 3d at 387 (¶18) (holding that evidence of other crimes may be admitted under Rule 404(b) to show consciousness of guilt). In addition, our Supreme Court has held that "[w]here substantially necessary to present to the jury the complete story of the crime, evidence or testimony may be given even though it may reveal or suggest other crimes." *Palmer v. State*, 939 So. 2d 792, 795 (¶9) (Miss. 2006) (internal quotation marks omitted). Here, had the trial judge censored Young's own reference to his prior "felonies," the jury would have heard an incomplete and distorted version of his admonition to "tell the truth."

¶14. Accordingly, we are satisfied that the evidence was admissible for a permissible purpose under Rule 404(b). Indeed, since the specific nature of Young's prior crimes was not disclosed to the jury, it is difficult to see how this testimony could have been used for the impermissible purpose of showing that he "acted in conformity therewith." M.R.E. 404(b). In addition, the trial judge did not abuse his discretion in finding that the probative value of

the testimony was not substantially outweighed by the danger of unfair prejudice. The testimony was relevant and probative, and any prejudice was limited by the limited nature of the testimony and the State's limited use of it. Accordingly, this issue is without merit.

### III. Glenn's Testimony

¶15. At trial, Glenn testified that he was no longer angry with Young. Glenn explained, "I thought about the situation, what happened. Then I looked at [Young], this and that. I know times where [K.M.] has done stuff." Young's attorney then asked, "Like what?" The State objected on relevance grounds, and the trial judge ruled that he would "sustain [the objection] at this point" and directed Young's attorney to "[a]sk another question." Young's attorney subsequently asked Glenn, "[H]ave you ever known [K.M.] to be dishonest with you?" The State again objected on relevance grounds, and the trial judge sustained the objection. A short bench conference ensued out of the hearing of the court reporter, after which the judge reiterated that the objection was sustained. Young's attorney did not make a proffer on the record after either objection was sustained.

¶16. Young now argues that the trial judge abused his discretion by sustaining the State's objections and preventing Glenn from testifying about "stuff" K.M. had "done" and alleged instances of dishonesty. However, "[w]hen testimony is not allowed at trial, a record of the proffered testimony must be made in order to preserve the point for appeal." *Green v. State*, 89 So. 3d 543, 554 (¶28) (Miss. 2012) (quoting *Metcalf v. State*, 629 So. 2d 558, 567 (Miss. 1993)); *see* M.R.E. 103(a)(2). The burden to make the proffer is on the offering party. *Redhead v. Entergy Miss. Inc.*, 828 So. 2d 801, 808 (¶20) (Miss. Ct. App. 2001). Without

7

a proffer this Court cannot "know what testimony was excluded." *Id.* Young failed to make any proffer of the excluded testimony, what "stuff" K.M. had supposedly "done," or any alleged instances of dishonesty. Indeed, Young effectively concedes this failure, as he also argues on appeal that his trial counsel was constitutionally ineffective for failing to make a proffer. Accordingly, this claim is procedurally barred and without merit.

### IV. Ineffective Assistance of Counsel

¶17. Young next argues that his trial counsel was constitutionally ineffective for failing to proffer Glenn's excluded testimony. We decline to address this issue on direct appeal because, as this Court and the Supreme Court have frequently explained,

> [i]t is unusual for this Court to consider a claim of ineffective assistance of counsel when the claim is made on direct appeal because there is usually insufficient evidence within the record to evaluate the claim. Because an appellate court is limited to the trial record on direct appeal, issues of ineffective assistance of counsel are more appropriate in a motion for post-conviction relief. We may address such claims on direct appeal only if (a) the issues are based on facts fully apparent from the record, or (b) the parties stipulate that the record is adequate, and we determine that additional findings of fact by a trial judge are not needed. If the record is not sufficient to address the claims on direct appeal, we dismiss the claims without prejudice, preserving the defendant's right to raise the claims later in a properly filed motion for post-conviction relief.

*Shinn v. State*, 174 So. 3d 961, 965 (¶11) (Miss. Ct. App. 2015) (internal citations, quotation marks, emphasis, and alterations omitted).

¶18. Appropriately, the State does not stipulate that the present record is adequate to decide Young's claim on direct appeal. In order to establish a claim of ineffective assistance of counsel, Young must show *both* (1) that "counsel's performance was deficient"—i.e., "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed

8

the defendant by the Sixth Amendment"—*and* (2) that he was prejudiced as a result—i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Even if we assumed that the failure to proffer Glenn's testimony was an error of constitutional significance, there is no way to determine on the present record whether Young suffered any prejudice as a result. Accordingly, we do not address this claim. If the Mississippi Supreme Court grants permission, Young may raise the issue in a properly filed motion for post-conviction relief.

## V.     Jury Instruction

¶19.    In his final issue on appeal, Young argues that the trial court erred by instructing the jury on the elements of the offense of sexual battery as follows:

> [Young] has been charged in the indictment with sexual battery. If you find from the evidence in this case beyond a reasonable doubt that:
>
> 1.      [Young], on or about July 29, 2012, in Adams County, Mississippi,
>
> 2.      Did willfully and unlawfully engage in sexual penetration with [K.M.,] a female child under the age of fourteen (14) years,
>
> 3.      By inserting his penis into her vagina and/or anus,
>
> 4.      When the [Young] was twenty-four (24) or more months older than [K.M.], then you should find [Young] guilty as charged.
>
> If the prosecution has failed to prove any one or more of the above elements beyond a reasonable doubt, then you should find [Young] not guilty.

Young argues that the third element's "and/or" deprived him of his right to a unanimous verdict because some jurors may have convicted him of vaginal penetration, while others may have convicted him of anal penetration. The argument is procedurally barred and

9

substantively without merit.

¶20. First, Young did not object to the instruction at trial, so he is barred from challenging it on appeal. *See, e.g.*, *Smith v. State*, 835 So. 2d 927, 939 (¶34) (Miss. 2002) ("This Court has held on numerous occasions that an offended party's failure to object to jury instructions at trial procedurally bars the issue on appeal." (quoting *Jones v. State*, 776 So. 2d 643, 653 (¶35) (Miss. 2000))). Accordingly, we can review his claim only for plain error. *See Fitzpatrick v. State*, 175 So. 3d 515, 522 (¶31) (Miss. 2015).

¶21. Second, the instruction was not erroneous, much less plainly erroneous. As the State points out, this Court has held that the particular "method of achieving sexual penetration is not an element of the offense" of sexual battery. *Chandler v. State*, 789 So. 2d 109, 112 (¶7) (Miss. Ct. App. 2001); *see also Hines v. State*, 472 So. 2d 386, 390 (Miss. 1985) (rejecting the argument that an indictment for sexual battery was insufficient because it "fail[ed] to specify which organ of [the defendant's] body was said to have penetrated which orifice of [the victim]"); *People v. Rodriguez*, 914 P.2d 230, 258 (Colo. 1996) (holding that "specification of the particular manner in which [the defendant] committed the element of sexual intrusion" is not part of the essential element of the offense); *People v. Ross*, 917 N.E.2d 1111, 1121 (Ill. App. Ct. 2009) ("Illinois case law provides that the type of sexual penetration is not an element of the offense, and its inclusion in the indictment is merely surplusage. . . . The State need only prove that a type of sexual penetration occurred beyond a reasonable doubt." (citations, quotation marks omitted)). "'Sexual penetration' includes cunnilingus, fellatio, buggery or pederasty, any penetration of the genital or anal openings

10

of another person's body by any part of a person's body, and insertion of any object into the genital or anal openings of another person's body." Miss. Code Ann. § 97-3-97(a) (Rev. 2006). The jury unanimously convicted Young of sexually penetrating the victim, K.M., which is the essence of the offense of sexual battery. *See Johnson v. State*, 626 So. 2d 631, 632 (Miss. 1993). Accordingly, Young's challenge to the instruction is without merit.

## CONCLUSION

¶22. Young's claims of error by the trial court are all procedurally barred and/or without merit, and his ineffective assistance claim is not capable of determination on direct appeal. Accordingly, his conviction and sentence are affirmed.

¶23. **THE JUDGMENT OF THE CIRCUIT COURT OF ADAMS COUNTY OF CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO ADAMS COUNTY.**

 **LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, FAIR, AND GREENLEE, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.**